# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**TRACY LITTLEJOHN,**

    **Plaintiff,**

    v.

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

Case No. 2:18-cv-530
**JUDGE JAMES L. GRAHAM**
Chief Magistrate Judge Elizabeth P. Deavers

## REPORT AND RECOMMENDATION

Plaintiff, Tracy Littlejohn, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 15), the Commissioner's Memorandum in Opposition (ECF No. 20), and the administrative record (ECF No. 8). Plaintiff did not file a Reply. For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

### I. BACKGROUND

In June 2013, Plaintiff filed applications for disability insurance benefits, alleging that she had been disabled since March 7, 2012. (R. at 263–66.) Plaintiff's application was denied initially and upon reconsideration. (R. at 167–70, 173–79.) Plaintiff sought a *de novo* hearing before an administrative law judge. (R. at 181–82.) Administrative Law Judge ("ALJ") Thomas

L. Wang held a hearing on July 1, 2015, at which Plaintiff, who was represented by counsel, appeared and testified. (R. at 48–64.) On August 11, 2015, the ALJ issued a partially favorable decision. (R. at 141–53.) On December 19, 2016, the Appeals Council vacated the ALJ's decision, including the parts favorable to Plaintiff, and remanded the case to the ALJ for resolution of certain issues. (R. at 163–65.) The Appeals Council specifically instructed the ALJ to obtain additional evidence concerning Plaintiff's impairments; give further consideration to Plaintiff's residual functional capacity ("RFC") and, in doing so, evaluate the treating and non-treating source opinions as well as non-examining source opinions and explain the weight given to such opinion evidence; and obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on Plaintiff's occupational base with the instruction that the hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. (R. at 164.)

Following remand, the ALJ held a hearing on June 28, 2017, at which Plaintiff, who was represented by counsel, appeared and testified. (R. at 78–91.) Eric Pruitt testified as a vocational expert ("VE") at the hearing. (R. at 91– 104.) Following the hearing on June 28, 2017, the ALJ issued two sets of interrogatories to the VE in order to comply with the Appeals Council directive on the issue of Plaintiff's RFC. (R. at 15, 373–77, 386.) The VE provided written responses to these interrogatories. (R. at 15, 379–82, 387–88.) Although these interrogatories and VE responses were proffered to Plaintiff's counsel, thereby giving Plaintiff the opportunity to submit a written statement as to the evidence or request a supplemental hearing (R. at 15, 383–84, 389–90), her counsel did not respond or seek a supplemental hearing. (R. at 15.)

On September 18, 2017, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 15–31.) On April 24, 2018, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1–5.) Plaintiff then timely commenced the instant action.

## II. ADMINISTRATIVE DECISIONS & ADDITIONAL VOCATIONAL EVIDENCE

### A. ALJ Decision Dated August 11, 2015

On August 11, 2015, the ALJ issued his first decision. (R. at 140–53.) The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2017. (R. at 143.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially gainful activity since her alleged onset date. (R. at 143.)

At step two, the ALJ concluded that Plaintiff had the following severe impairments: depression, rotator cuff tear bilaterally, obstructive sleep apnea, congestive heart failure,

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

impingement and acromioclavicular joint arthrosis bilaterally, osteoarthritis, hypertension, and obesity. (R. at 143.)

At step three of the sequential process, the ALJ concluded that that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 144.) At step four, the ALJ assessed Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that since March 7, 2012, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant could lift and or carry 10 pounds occasionally. The claimant can stand and or walk 6 hours out of an 8 hour work day. The claimant can sit for 6 hours of an 8 hour work day. The claimant can occasionally push or pull. The claimant can never climb ladders, ropes, or scaffolds and can never crawl. The claimant can occasionally kneel. The claimant can never reach overhead, except incidentally. The claimant can unlimitedly reach forward and to the sides. The claimant can do no commercial driving. The claimant is limited to no more than occasional exposure to extreme cold. The claimant can never use heavy machinery and can have no exposure to unprotected heights. Goal based production is measured by end result, not pace work. The claimant is limited to simple, routine, and repetitive tasks. The claimant would be off task 5 percent of the workday. The claimant would work in a low stress job, defined as only occasional changes in the work setting.

(R. at 145.)

Relying on the VE's testimony, the ALJ determined that Plaintiff was unable to perform any past relevant work. (R. at 150.) The ALJ determined that, prior to the established disability onset date, Plaintiff was a younger individual age 45–49 but on December 29, 2014, her age category changed to an individual closely approaching advanced age. (R. at 151.) The ALJ went on to find that, prior to December 29, 2014, transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules (also known as "the Grid") as a framework supports a finding that Plaintiff is "not disabled" whether or not she has transferable job skills. (R. at 151.) The ALJ determined that, beginning on December 29, 2014,

Plaintiff had not been able to transfer job skills to other occupations. (*Id.*) He also determined that, prior to that date, Plaintiff's age category changed, considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (*Id.*) However, the ALJ went on to find that, beginning on December 29, 2014, when Plaintiff's age category changed, considering her age, education, work experience, and residual functional capacity, there were no jobs that exist in significant numbers in the national economy that she could perform. (R. at 152.) He therefore concluded that Plaintiff was not disabled prior to December 29, 2014, but became disabled on that date and had continued to be disabled through the date of the decision. (*Id.*)

**B.     Remand Order of the Appeals Council**

On December 19, 2016, the Appeals Council vacated the ALJ's decision dated August 11, 2015, including the parts favorable to Plaintiff, and remanded the case to the ALJ for resolution of certain issues. (R. at 163–65.) In doing so, the Appeals Council noted that the ALJ's articulated RFC "falls between two medical-vocational rules that direct opposite conclusions as of the date the claimant's age category changed" and that "it is not a foregone conclusion that a sedentary medical-vocational rule applies in this case." (R. at 163.) The Appeals Council also identified problems with the ALJ's assessment of the opinion evidence, requiring further evaluation. (R. at 163–64.) Accordingly, the Appeals Council specifically directed, upon remand, the ALJ to do the following:

> •   Obtain additional evidence concerning the claimant's impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512-1513).

> • Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p). In so doing, evaluate the treating and non-treating source opinions pursuant to the provisions of 20 CFR 404.1527 and Social Security Rulings 96-2p and 96-5p and non-examining source opinions in accordance with the provisions of 20 CFR 404.1527(e) and Social Security Ruling 96-6p, and explain the weight given to such opinion evidence.
>
> • Obtain supplemental evidence from a vocational expect to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Rulings 83-12 and 83-14). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

(R. at 164.) The Appeals Council directed the ALJ, in compliance with the above, to offer Plaintiff an opportunity for hearing, take "any further action needed to complete the administrative record[,]" and issue a new decision. (R. at 165.)

## C.     Additional Vocational Evidence

Following remand, the ALJ held a second administrative hearing on June 28, 2017, at which the VE testified. (R. at 75–103.) After the second hearing and in accordance with remand order of the Appeals Council, the ALJ issued a first set of written interrogatories to the VE on July 10, 2017. (R. at 15, 373–77.) The VE provided written responses to these interrogatories. (R. at 15, 379–82.) In response to a question whether there was sufficient evidence to allow him to form an opinion of Plaintiff's vocational status, the VE answered in the affirmative. (R. at 379.) The ALJ then asked the VE to assume a hypothetical individual ("the hypothetical individual") with the following limitations:

6

> 7. Assume a hypothetical individual who was born on December 30, 1964, has at least a high school education and is able to communicate in English as defined in 20 CFR 404.1564 and 416.964, and has work experience as described in #6 above [social service aide, which is a light and skilled position]. Assume further that this individual has the residual functional capacity (RFC) to: lift and/or carry 10 pounds occasionally and 10 pounds frequently; sit for 6 hours in an 8-hour workday; and stand and/or walk for 6 hours in an 8-hour workday. The claimant can occasionally push and/or pull, kneel, reach overhead, and work in environments where the temperatures are less than 40 degrees Fahrenheit. The claimant can never climb ladders, ropes, or scaffolds, crawl, drive commercially, use heavy machinery, or work at unprotected heights. The claimant can perform goal-based production I work measured by end result (not pace work) and can perform simple, routine, and repetitive tasks. The claimant would be off task 5 percent of the workday and could work in a low stress job (defined in the claimant's case as occasional changes in the work setting).

(R. at 380.) The VE responded that the hypothetical individual could not perform Plaintiff's past job because "work activities are more complex than 'simple, routine, and repetitive.'" (*Id.*) In so responding, the VE identified that there was a conflict between the occupational evidence provided in that response and the occupational evidence in the Dictionary of Occupational Titles ("DOT") and/or the Selected Characteristics of Occupations ("SCO"). (*Id.*) The VE explained that on task behavior is not the DOT and that his testimony is based on his work experience. (R. at 381.) The VE also responded that the hypothetical individual would not have skills acquired from past work that are readily transferable to semi-skilled or skilled work within the RFC because the "RFC is for unskilled work only. Transferrable work skills cannot transfer to unskilled work." (*Id.*) However, the VE responded that the hypothetical individual could perform unskilled jobs that exist in the national economy, including film touch-up inspector, document preparer, and printed circuit board touch-up screener. (*Id.*) According to the VE, any of the individual following limitations would, if added to the hypothetical individual's RFC would, render that RFC work-preclusive: four 15-minute breaks in addition to regularly scheduled breaks, or off task 10 percent of the workday, or frequent supervision. (R. at 382.)

7

The VE explained that most employers consider unacceptable being off task at a rate of ten percent or above for unskilled work. (*Id.*) He also explained that frequent supervision on an ongoing basis is not consistent with competitive employment but would be consistent with sheltered employment. (*Id.*)

On July 25, 2017, the ALJ asked the VE the following additional question: "For that RFC [identified above for the hypothetical individual], are there any light jobs and if so, please give details, including national numbers. In addition, please give the cumulative numbers for that RFC." (R. at 386–87.) On August 8, 2017, the VE responded in writing that examples of light unskilled occupations consistent with that RFC include labeler (approximately 66,000 in the national economy), tacking machine tender (approximately 51,400 in the national economy), and label coder (approximately 47,800 in the national economy). (R. at 388.) The VE went on to note that these positions are representative examples and that "there are other occupations that are consistent with the limitations" set in the hypothetical individual's RFC. (*Id.*) The VE estimated that the cumulative number is approximately 932,000. (*Id.*)

On August 10, 2017, the ALJ advised Plaintiff's counsel in writing that he had secured additional evidence that he proposes to enter into the record and directed counsel how to view the new proposed exhibits. (R. at 389.) The VE further advised that Plaintiff could submit a written statement or request a supplemental hearing. (R. at 389–90.) The ALJ specifically advised that if he did not hear from counsel within ten days, he will assume that Plaintiff did not wish to submit any written statement and did not wish to request a supplemental hearing or to orally question the author of the new evidence and would enter the new evidence into the record and issue his decision. (R. at 390.) No response or request for a supplemental hearing was received. (R. at 15.)

## D. ALJ Decision Dated September 18, 2017

On September 18, 2017 the ALJ issued his second decision. (R. at 15–31.) The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2017. (R. at 18.) At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantially gainful activity since her alleged onset date of March 7, 2012. (*Id.*)

At step two, the ALJ concluded that Plaintiff had the following severe impairments: bilateral rotator cuff tear; impingement and acromioclavicular joint arthrosis; osteoarthritis; congestive heart failure; obesity; obstructive sleep apnea; hypertension; and depression. (*Id.*)

At step three of the sequential process, the ALJ concluded that that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) At step four, the ALJ assessed Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and/or carry 10 pounds occasionally and 10 pounds frequently; sit for 6 hours in an 8-hour workday; and stand and/or walk for 6 hours in an 8-hour workday. The claimant can occasionally push and/or pull, kneel, reach overhead, and work in environments where the temperatures are less than 40 degrees Fahrenheit. The claimant can never climb ladders, ropes, or scaffolds, crawl, drive commercially, use heavy machinery, or work at unprotected heights. The claimant can perform goal-based production/ work measured by end result (not pace work), and can perform simple, routine, and repetitive tasks. The claimant would be off task 5 percent of the workday and could work in a low stress job (defined in the claimant's case as occasional changes in the work setting).

(R. at 21.)

Relying on the VE's testimony, the ALJ concluded that Plaintiff is unable to perform any past relevant work. (R. at 29.) The ALJ noted that Plaintiff was born on December 30, 1964, and was 47 years old, which is defined as a younger individual age 18–49, on the alleged onset

date but that Plaintiff subsequently changed age category to closely approaching advanced age. (*Id.*) The ALJ determined that considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that exist in significant numbers in the national economy that she could perform. (R. at 30.) In so finding, the ALJ explained as follows:

> If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21 and Rule 202. 14. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. As directed by the Appeals Council, and to determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as:
>
>     1. Labeler (DOT No. 920.687-126) (66,000 jobs nationally)
>     2. Tacking machine tender (DOT No. 786.685-034) (51,400 jobs nationally)
>     3. Label coder (DOT No. 920.587-014) (47,800 jobs nationally)
>
> The vocational expert's analysis is accepted as it is not contradicted and his sources of data are considered reliable. His testimony was consistent with the Dictionary of Occupational Titles and the Selected Characteristics of Occupations (SCO) defined in the revised DOT (SSR 00-4p) and accurately identified the types and approximate number of jobs that the claimant can perform. The jobs identified exist in several industries and are not of an isolated nature.

(*Id.*) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. (R. at 31.)

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV.  ANALYSIS

Plaintiff advances two contentions of error. Plaintiff first asserts that the ALJ's step five finding that she can perform jobs that exist in significant numbers in the national economy is legally erroneous and not based on substantial evidence. Plaintiff next contends that the ALJ's RFC appears to be a limitation to sedentary work, which should have directed a finding of disability as of Plaintiff's 50th birthday. These contentions of error are addressed in turn.

11

## A. Step Five Finding

As set forth above, Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). "At step five, the burden shifts to the Commissioner to show that other jobs in significant numbers exist in the national economy that the claimant could perform given her residual functional capacity and considering other relevant vocational factors." *Tucker v. Comm'r of Soc. Sec.*, No. 18-2300, 2019 WL 2418995, at *2 (6th Cir. June 10, 2019) (citing *Jones*, 336 F.3d at 474).

Here, Plaintiff contends that the ALJ's finding at step five is legally erroneous because "the vocational expert *never identified* the jobs of tacking machine tender and label coder, and only identified the job of labeler in response to a hypothetical question that was not consistent

with the ALJ's assessed RFC." (ECF No. 15 at 30 (emphasis added); *see also id*. ("Plaintiff's counsel can find no mention, in either expert's testimony, or in the interrogatories, of the jobs 'tacking machine tender,' or 'label coder,' not any reference to the DOT codes cited by the ALJ.").) Plaintiff goes on to assert that "[t]he only elicited testimony as to the specific RFC adopted in this case on one occasion: via the vocational expert interrogatories[,]" which identified film touchup inspector, document preparer, and printed circuit board touch-up screener. (*Id*. at 31 (citing R. at 379–82.).) Plaintiff therefore asserts that the ALJ "never offered testimony supporting a finding that" the jobs of labeler, tacking machine tender, and label coder could be performed within the RFC assessed by the ALJ and that this error was not harmless. (*Id*. at 31–34.)

Plaintiff's arguments are not well taken. Plaintiff apparently overlooked the ALJ's additional interrogatory issued on July 25, 2017, to which the VE responded on August 8, 2017. (R. at 386–88.) As detailed above, the VE specifically identified the occupations of labeler, tacking machine tender, and label coder as consistent with the ALJ's articulated RFC. (R. at 380, 386–88.) The ALJ issued this interrogatory, along with other interrogatories, in accordance with the remand order of the Appeals Council. (R. at 164–65.) The ALJ therefore did not err in relying on the VE's interrogatory response, which provides substantial evidence to the ALJ's step five finding. *See Dyer v. Soc. Sec. Admin*., 568 F. App'x 422, 428–29 (6th Cir. 2014) ("A vocational expert's testimony in response to an accurate hypothetical represents substantial evidence that the claimant has the vocational qualifications to perform specific jobs.") (citations omitted); *McCraney v. Comm'r of Soc. Sec*., 68 F. App'x 570, 573 (6th Cir. 2003) ("This response [from a vocational expert in response to the ALJ's interrogatories] satisfied the Commissioner's burden of showing that a significant number of jobs were available to [the

13

plaintiff], despite her impairments."); *Marritt v. Comm'r of Soc. Sec.*, No. 3:18-cv-119, 2019 U.S. Dist. LEXIS 1085, at *26–27 (N.D. Ohio Jan. 3, 2019)[2] (stating that the plaintiff's "argument that the ALJ's decision at Step Five was not supported by substantial evidence lacks merit, because the ALJ was permitted to rely upon the VE's response to a post-hearing interrogatory") (citing *McCraney*, 68 F. App'x at 573).

For these reasons, it is **RECOMMENDED** that Plaintiff's first contention of error be **OVERRULED**.

**B.     The ALJ's Assessed RFC**

Plaintiff next argues that the ALJ's assessed RFC does not describe an exertional category and appears to be a limitation of sedentary, which should have directed a finding of disability as of Plaintiff's 50th birthday. (ECF No. 15 at 34–36.) In support, Plaintiff contends that the only jobs identified by the VE were film touchup inspector, document preparer, and printed circuit board touch up screener, which all fall into the sedentary exertional category, warranting a directed verdict. (*Id*. at 35–36.)

Plaintiff's argument is not well taken. As an initial matter, the applicable regulations define light work as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). Nevertheless, "[e]ven though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id*. In addition, Social Security Ruling 83-10

---

[2] The Westlaw citation to *Marritt* contains an incomplete copy of the decision. *See Marritt v. Comm'r of Soc. Sec.*, No. 3:18-cv-119, 2019 WL 95553, at *9 (N.D. Ohio Jan. 3, 2019) (ending final paragraph with an incomplete sentence with "Editor's Note: Tabular or graphical material not displayable at this time").

provides, *inter alia*, that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." Here, the RFC fell in the light work category because the ALJ determined that Plaintiff that could stand and/or walk for six hours out of an eight-hour workday and occasionally push and/or pull. (R. at 21.) *See* 20 C.F.R. § 404.1567(b), SSR 83-10.

Moreover, Plaintiff's apparent belief that she was limited to sedentary work because the ALJ concluded that she could lift and carry only ten pounds is unavailing. (ECF No. 15 at 34–36 (citing R. at 21).) *See Reese v. Comm'r of Soc. Sec.*, No. 99-4223, 230 F.3d 1359 (Table), 2000 WL 1434585, at *2 (6th Cir. Sept. 18, 2000) ("Her [the claimant's] ability to walk and stand for six out of eight hours in a normal workday, coupled with her ability to lift ten pound objects with some frequency, clearly support the Commissioner's conclusion that [the claimant's] abilities enable her to do 'light work' as defined in the grids and Regulation 83-10.").

Finally, Plaintiff appears to base her argument on the erroneous belief that the VE identified only three sedentary jobs of film touchup inspector, document preparer, and printed circuit board touch up screener. (ECF No. 15 at 35–36.) However, as previously discussed, the VE identified the occupations of labeler, tacking machine tender, and label coder, which are consistent with the articulated RFC and are representative examples of light unskilled occupations. (R. at 21, 380, 386–88.) Despite being afforded the opportunity to do so, Plaintiff never issued a written statement challenging this evidence or request a supplemental hearing to examine this evidence. (R. at 15, 390.) The ALJ was therefore entitled to rely on this uncontroverted evidence, which enjoys substantial support in the record. *See Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 375 (6th Cir. 2006) ("The ALJ's finding that a significant number of jobs existed for [the claimant] is also supported by substantial evidence because the

15

uncontradicted testimony of the vocational expert identified three potential positions with a significant number of jobs available."); *see also Dyer*, 568 F. App'x at 428–29; *McCraney*, 68 F. App'x at 573; *Marritt*, 2019 U.S. Dist. LEXIS 1085, at *26–27.

Accordingly, it is **RECOMMENDED** that Plaintiff's second contention of error be **OVERRULED**.

## V. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, it is therefore **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

## VI. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that

defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).


Date:  August 7, 2019                             s/ *Elizabeth A. Preston Deavers*
                                                                       ELIZABETH A. PRESTON DEAVERS
                                                                       CHIEF UNITED STATES MAGISTRATE JUDGE